[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a corporation engaged in the business CT Page 2495 of the wholesale distribution of gasoline. The defendants operated a retail gasoline service station known as "Bill's Service." The plaintiff brings this action against Floyd Cameron individually and Cameron Dillon Service, Inc., a corporation, for amounts owed on an open account for the purchase of gasoline. The corporation has admitted liability. The parties have stipulated that the amount owed the plaintiff is $23,709. The sole question for the court to decide is whether Cameron is personally liable. The answer is no.
The plaintiff claims that it entered into a contract with Cameron individually for the sale of the gasoline. Cameron claims that he dealt with the plaintiff only in his capacity as president of the corporation. Although that contention is not asserted in a special defense, he nevertheless bears the burden of proving he acted only as agent for the corporate defendant. Botticello v. Stefanovicz,177 Conn. 22, 26 (1979). Furthermore, in order "[t]o avoid personal liability, it is the duty of an agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal . . . ." Robert T. Reynolds Associates, Inc. v. Asbeck, 23 Conn. App. 247, 251 (1990).
In March 1989, Lou Salerno, the plaintiff's sales manager met with Floyd Cameron to discuss a contract for supplying Citgo gasoline to the service station. Their testimony was in conflict over what Cameron told Salerno at that meeting, as well as other details of their agreement. However, documentary evidence tends to support Cameron's version. He testified that he told Salerno that he was the president of Cameron Dillon Service, Inc. and that the corporation was doing business at the station under the name "Bill's Service." He further testified that the corporation would buy gasoline only on a "load to load" basis; that is, payment for a load of gasoline would be made upon delivery of the next load, rather than C.O.D. He testified that Salerno said the plaintiff would accept that arrangement only if the purchaser provided a letter of credit to finance any delinquency. Cameron thereafter obtained a letter of credit from Mechanics Savings Bank, dated April 7, 1989, in favor of the plaintiff and "for the account Cameron Dillon Service, Inc." (Defendant's Exhibit #1). On that same date, the plaintiff delivered the first load to Bill's Service Station. One week later, on April 14, the plaintiff delivered the second load and the corporation paid for the first load, all in accordance with the "load to load" agreement. These transactions are shown by the plaintiff's invoices (Plaintiff's Exhibit #2) and the corporation's checks (Defendant's Exhibit (2). CT Page 2496
The plaintiff's principal evidence to disprove Cameron's claim that he disclosed the agency relationship at the initial meeting with Salerno is the latter's testimony. The court finds that to be not persuasive. Salerno's memory of the details of that meeting is questionable. In particular, his recollection of their agreement on a critically important topic, the payment arrangement, is contradicted by the documentary evidence. At the least, this casts doubt on his ability to recall what Cameron told his regarding the corporation and Cameron's role in it. His testimony is then seriously undermined by the letter of credit, issued almost contemporaneously, which clearly notifies the plaintiff that the corporation is the entity with which it will do business.
The plaintiff also points to the fact that bills were sent to "Bill's Service" and that the credit card machine was set up to print "Bill's Service." This, it contends, is proof that there was no disclosure of the corporate entity. There is no dispute, however, that the business was conducted under the name "Bill's Service," and these facts are not inconsistent with Cameron's testimony and the other evidence that he told Salerno that the corporation was the principal and he was its agent.
The court finds that Cameron told the plaintiff, through Salerno, in March 1989, that its agreement was with Cameron 
Dillon Service, Inc. and that he was acting as president of that corporation. The court finds further that the plaintiff also received notice of the fact that its customer was the corporation by means of the letter of credit, which explicitly named the corporation as such at the very inception of the relationship.
In addition to the statements of Cameron during the initial discussions in 1989 and the letter of credit, Cameron's position is further supported by the fact that for the entire year that the parties did business together, all payments to the plaintiff were made on checks of Cameron Dillon Service, Inc. Some of these checks were signed by Cameron, some by Francis Dillon, and some by Anna Dillon. All signatures are followed by the legend "Authorized Signature," indicating the signers were acting only in representative capacities.
All of the amount owed to the plaintiff was incurred during and after March 1990. The plaintiff concedes that some time during the spring of 1990, it was aware that Cameron was an agent of the corporation and claimed to be acting only in that capacity in purchasing gasoline. Salerno testified at first that he was told this in May 1990. In later testimony, he said he learned about it in March. John Baker, the CT Page 2497 plaintiff's president, said he was told about the corporation in March, April, or May 1990. He could not remember which. The plaintiff requested that Cameron sign a personal guaranty of payment for the purchases. He refused. He did arrange to renew the corporation's letter of credit, however, on March 30, 1990. The plaintiff continued to take deliveries of gasoline during March 1990 and thereafter, without receiving full payment. On the basis of the foregoing evidence, the court finds that the plaintiff sold the gasoline for which it now demands payment at a time when it knew that Cameron was acting only as an agent for the corporation.
Based upon the findings of the court as set forth above, the court concludes that Cameron was acting at all times relevant to this case as an agent of the corporation in purchasing the gasoline; that he disclosed that he was acting in that capacity and disclosed the identity of his principal, Cameron Dillon Service, Inc., to the plaintiff in advance; and that the plaintiff knew that Cameron was acting only as agent when it delivered the gasoline. The court further concludes, therefore, that Cameron is not liable personally for the unpaid charges for the gasoline.
For all of the reasons set forth above, the court finds the defendant Cameron Dillon Service, Inc. is liable to the plaintiff in the amount of $23,709.
Judgment may enter for the plaintiff as against the said corporation in the amount of $23,709 and judgment may enter in favor of defendant Floyd Cameron.
Maloney, J.